UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY,
and GEICO CASUALITY COMPANY,

                    Plaintiffs,                              MEMORANDUM AND ORDER
                                                             17-CV-2802

       - against -

IGOR MAYZENBERG,
MINGMEN ACUPUNCTURE SERVICES, P.C.,
SANLI ACUPUNCTURE, P.C.,
LAOGONG ACUPUNCTURE, P.C.,
IGOR DOVMAN, and
TAMILLA DOVMAN a/k/a TAMILLA KHANUKAYEV,

                    Defendants.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company,

GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or

"Plaintiffs") brought this declaratory judgment, fraud, and unjust enrichment action against

Defendants Igor Mayzenberg ("Mayzenberg"), Mingmen Acupuncture Services, P.C.

("Mingmen"), Sanli Acupuncture, P.C. ("Sanli"), Laogong Acupuncture, P.C. ("Laogong"), Igor

Dovman ("I. Dovman"), and Tamila Dovman ("T. Dovman" and collectively with I. Dovman, "the

Dovmans"), (collectively "Defendants").  Pending now before this Court is GEICO's motion (1)

to stay all pending and future No-Fault insurance collections arbitrations before the American

Arbitration Association (2) to stay all pending and future No-Fault collections lawsuits in New

York state courts, and (3) directing attachment of Defendants' property up to the amount of

$1,458,000.00 and directing Defendants to disclose the identity of all real property, bank accounts,

brokerage accounts, accounts receivable, cash, stocks, bonds, motor vehicles, and boats in which they have any interest, as well as any debts owed to Defendants by any party.  (ECF No. 51).  For the reasons explained below, GEICO's motion is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

### I.    The Parties

GEICO is an insurance company authorized to conduct business and issue automobile insurance policies in the State of New York.  (Amended Complaint ("Am. Compl.") ¶ 12).  Mayzenberg is a licensed acupuncturist and owns Mingmen, Sanli, and Laogong, professional acupuncture corporations in Brooklyn.  (*Id.* at ¶ 13-16).  Mingmen currently administers acupuncture services, but Laogong was officially dissolved in 2010 and Sanli has not treated patients since 2011.  (*Id.* at ¶¶ 16, 93).  The Dovmans are both unlicensed laypersons who reside in Brooklyn and own various shell entities that allegedly provide advertising, marketing, and consulting services to Mingmen.  (*Id.* at ¶¶ 17-18).

### II.   New York's No-Fault Insurance Laws

New York's No-Fault Insurance laws are designed to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts, and to provide substantial premium savings to New York motorists.  *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014).  Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, et seq.), (collectively "No-Fault Insurance Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") up to $50,000.00 per insured for necessary expenses incurred for healthcare goods and

services, including physician services, chiropractic services, physical therapy services, and acupuncture services.

Insureds can assign their No-Fault Benefits rights to health care service providers. Those providers can then submit claims directly to the insurance company and receive payment for medically necessary services. 11 N.Y.C.R.R. § 65-3.11(a). Insurers must pay or deny those claims within 30 calendar days after a claim is submitted and failure to comply with this requirement precludes the insurer from raising most defenses, including fraud and lack of medical necessity. N.Y. Ins. Law § 5106(a); *Presbyterian Hosp. v. Maryland Cas. Co.*, 683 N.Y.2d 274, 289, 683 N.E.2d 1, 660 N.Y.S.2d 536 (1997).

Insurers must also provide claimants the opportunity to arbitrate any dispute involving the insurer's liability to pay a claim and as a result, every automobile insurance contract contains a boilerplate arbitration clause. N.Y. Ins. Law § 5106(b). Those arbitrations are "special expedited" proceedings, where no oral arguments are heard, virtually no defenses are permitted, and discovery is limited or non-existent. *See generally* 11 N.Y.C.R.R. § 65-4.5; *see also Mun*, 751 F.3d at 99. A stenographic record of the arbitration proceedings is not required, 11 N.Y.C.R.R. § 65-4.5(b)(2)(k)(1), and all No-Fault arbitrators are "appointed by, and serve at the pleasure of, the superintendent" of insurance. 11 N.Y.C.R.R. § 65-4.5(b)(2)(d)(3). Multiple arbitration disputes can be consolidated, but only where practical and only if the claims arise out of the same accident. 11 N.Y.C.R.R. § 65-4.5(b)(2)(c).

A healthcare service provider is not eligible to collect No-Fault Benefits if it is unlawfully incorporated or "fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York . . . ." N.Y.C.R.R. § 65-3.16(a)(12). These eligibility requirements were promulgated "to combat rapidly growing incidences of fraud in the

no-fault regime." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 n.2, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005).  To be eligible for benefits, a medical services corporation (1) must be owned by a physician who actually engages in the practice of medicine through that corporation, N.Y. Bus. Corp. Law § 1508, (2) may not bill for services provided by physicians who are not employees of the corporation, such as independent contractors, 11 N.Y.C.R.R. §65-3.11(a), and (3) may not pay kickbacks to third parties for the referral of insureds.  8 N.Y.C.R.R. § 29.1(4); *see also Gov't Employees Ins. Co. v. Badia*, No. 13-CV-1720 (CBA), 2015 WL 1258218, at *9 (E.D.N.Y. 2015).  The claim forms submitted by the providers contain the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime . . . .

N.Y. Ins. Law § 403(d).

## III.   The Dispute

GEICO alleges that Defendants implemented a fraudulent scheme where Mingmen and Sanli billed GEICO for millions of dollars' worth of acupuncture services that they were not eligible to receive.  Specifically, Mayzenberg used Sanli and Laogong to pay kickbacks to the Dovman shell entities in exchange for their referral of insureds to Mingmen, who then hired independent contractors to perform medically unnecessary acupuncture services to accident victims.  Mingmen then submitted claims to GEICO for reimbursement of No-Fault Benefits under New York's No-Fault Insurance Laws.  (Am. Compl. ¶¶ 1-11).

GEICO claims it paid or denied all of Defendants' claims within the required 30 days, but that it did not discover that the claims they paid were fraudulent until shortly before it filed the Complaint in this action.  (Am. Compl. ¶¶ 195-98).  In the meantime, Defendants have commenced

4

over 180 No-Fault arbitration proceedings before the American Arbitration Association ("AAA") and over 500 lawsuits in state courts for unpaid claims. GEICO commenced this action on May 9, 2017 seeking to claw-back $622,000.00 it already paid to Defendants and a declaratory judgment that it is not obligated to pay $2,705,000.00 to Mingmen for unpaid fraudulent claims. (ECF No. 1). On May 14, 2018, GEICO filed this motion for a preliminary injunction, pending the disposition of its motion for a declaratory judgment: (1) to stay all pending and future No-Fault collection arbitrations before the AAA; (2) to stay all pending and future No-Fault collection lawsuits in New York state courts; and (3) directing attachment of Defendants' property up to the amount of $1,458,000.00, and directing them to disclose the identity of all real property, bank accounts, brokerage accounts, accounts receivable, cash, stocks, bonds, motor vehicles, and boats in which they have any interest, as well as any debts owed to Defendants by any party. (ECF No. 51).

## DISCUSSION

Rule 65 of the Federal Rules of Civil Procedure provides the standard for obtaining a preliminary injunction. Before the Court can addresses whether GEICO meets that standard, it will first address whether it has the power to grant the injunctions.

### I. Stay of All Pending and Future No-Fault Collection Arbitrations

GEICO argues that the Court should temporarily stay Defendants' No-Fault collection arbitrations because other courts in this District have done so in similar circumstances. However, the question of whether a federal district court has the power to stay and enjoin private arbitration proceedings when there is a valid agreement to arbitrate is an open one in the Second Circuit. *In re American Express Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011) (staying No-Fault arbitrations, but limiting its holding to the effect of a class-action settlement on a class member's

preexisting right to arbitrate settled claims).  There are valid agreements to arbitrate here because, as discussed above, they are required by statute.  N.Y. Ins. Law § 5106(b); 11 N.Y.C.R.R. §§ 65-4.1, et seq.

Under the Federal Arbitration Act, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  However, the Supreme Court has "applied the presumption favoring arbitration . . . only where it reflects . . . a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 289 (2010).  The purpose of the Federal Arbitration Act is "not to mandate the arbitration of all claims, but merely the enforcement . . . of privately negotiated arbitration agreements."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989) (internal quotations omitted). Generally, the Act prevents federal district courts from enjoining private arbitrations where an arbitration clause is present in the governing contract.  But the question here is whether the Act applies to an arbitration clause that is only present in the contract because it is required to be by law.  The Court has visited this issue before in the context of waiver, and held that New York law rather than the Federal Arbitration Act applied because the party's "right to arbitrate [was] a creation of state no-fault law" and the party "presented no evidence that the [] insurance contracts bargained for the right to arbitrate affirmative fraud claims through their private agreements." *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.,* 879 F. Supp. 2d 243, 263 (E.D.N.Y. 2012); *see also*


*Gov't Employees Ins. Co. v. Five Boro Psychological Servs., P.C.*, 939 F. Supp. 2d 208, 218 (E.D.N.Y. 2013).

The legislative history of the Act is telling and favors denying application of the Federal Arbitration Act in these circumstances. Congress found that "[m]andatory arbitration undermines the development of public law because there is inadequate transparency and inadequate judicial review of arbitrators' decisions" and noted "[a]rbitration can be an acceptable alternative when consent to the arbitration is *truly voluntary*, and occurs after the dispute arises." 2017 CONG. U.S. S. 2591 (emphasis added). The mandatory arbitration clause in GEICO's policies, prescribed by Section 5106(b) of New York Insurance Law, does not result in arbitrations that are "truly voluntary" because it is mandated by statute and not by voluntary agreement of the parties. Further, unlike a bargained-for arbitration clause, the parties here are not permitted to choose where the arbitrations take place, who will serve as the arbitrators, or any other procedural components of the arbitration. N.Y. Comp. Codes R. & Regs. tit. 11, § 65-4.5.

The involuntary agreement to arbitrate notwithstanding, the Court has a strong interest in judicial economy. This Court has granted a *temporary* stay of pending and future No-Fault arbitrations for that reason. In *Allstate Insurance Company v. Elzanaty*, 929 F. Supp. 2d 199, 220 (E.D.N.Y. 2013), the Court held:

> [i]t would severely threaten any judgment of this Court to have pending arbitrations or future arbitrations result in inconsistent rulings with regard to [Defendant's] eligibility for reimbursement of No-Fault insurance payments. The Court is fully aware that piecemeal litigation and inefficiency are at times unavoidable, especially in light of the FAA's strong mandate that contractual arbitration rights be respected. However, if these rights are delayed, rather than effectively terminated, the Court believes that a stay is the most appropriate solution here in order to avoid the large volume of arbitrations and inconsistent judgments that are gradually culminating in a procedural and substantive train wreck . . . . [U]nder the complicated procedural facts of this case, it cannot be said that the drafters of § 5106(b) intended or that the notions underlying the FAA permit the haphazard and contradictory concurrent flow of litigation and arbitration that appears here.

7

*See also Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012) (reasoning "[p]ermitting these individual claims to proceed to arbitration while [plaintiffs'] claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case.  In the interests of judicial economy, arbitration of such unpaid claims is stayed pending a decision in the present case."); *see also Allstate Ins. Co. v. Tvildiani*, No. 14-CV-732 (SJ), 2015 WL 13048729, at *1 (E.D.N.Y. Apr. 14, 2015) (reasoning "[l]itigating hundreds of arbitrations concurrent to this litigation would be inefficient and unwise.").  The same reasoning applies here.  If GEICO prevails on its declaratory judgment claim, it will be forced to institute over 180 separate lawsuits to vacate the arbitration awards,[1] only increasing the burden on New York state courts, costs for all parties involved in this action, and premiums for insureds.

Accordingly, the Court finds that it would frustrate the purposes of the Federal Arbitration Act and judicial economy if the Act is interpreted to preclude the Court from enjoining Defendants' No-Fault collection arbitrations.

## II. Injunctive Relief is Warranted under Rule 65

When determining whether to stay No-Fault collection arbitrations, courts look to the preliminary injunction standard.  *Elzanaty*, 929 F. Supp. 2d at 217.  Because the Court finds it has

---

[1] The No-Fault Insurance Law provides that "[t]he award of a master arbitrator shall be binding except for the grounds for review set forth in article seventy-five of the civil practice law and rules . . . ." N.Y. Ins. Law § 5106(c).  The New York Civil Practice Law and Rules provide that an arbitration award shall be vacated if the court finds "corruption, fraud or misconduct in procuring the award."  N.Y. C.P.L.R. § 7511(b).  It is also worth noting that Federal Arbitration Act provides that federal district courts may "make an order vacating [an arbitration] award upon the application of any party to the arbitration – (1) where the award was procured by corruption, fraud, or undue means . . . ."  9 U.S.C. § 10.

the power to temporarily stay pending and future private arbitration proceedings before the AAA, the Court will now determine whether GEICO has satisfied the requirements under Federal Rule of Civil Procedure 65 to warrant such an injunction.

### a.  Standard for Injunctive Relief

To prevail on a claim for injunctive relief, Plaintiffs must show "(1) irreparable harm absent the injunctive relief and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

The "showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Elzanaty*, 929 F. Supp. 2d at 221 (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)).  Irreparable harm occurs where "remedies available at law, such as monetary damages, are inadequate to compensate" the plaintiff for its injury. *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010).  The irreparable harm must be "not remote or speculative but . . . actual and imminent." *Jackson Dairy, Inc.*, 596 F.2d at 72.

GEICO claims it has a "virtual certainty of success in this action."  While the Court does not decide at this stage that GEICO has a "virtual certainty of success," we need not find with "absolute certainty" that GEICO will succeed on the merits of its claims.  *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *overruled on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).  For the reasons explained below, the Court finds that GEICO has established

that it will suffer irreparable harm absent an injunction to stay all pending and future arbitration

proceedings and it has a likelihood of success on the merits of its declaratory judgment claim.

### b. Irreparable Harm

GEICO primarily relies on this Court's decision in *Elzanaty* that multiple inconsistent

arbitration awards that will be inconsistent with this Court's declaratory judgment ruling will cause

GEICO irreparable harm. *Elzanaty*, 929 F. Supp. at 222. If this Court finds that Defendants are

ineligible for reimbursement on their unpaid claims, an award won by Defendants in arbitration

will not be enforceable. *Id.* at 221. While it is true that "[m]ere litigation expense, even substantial

and unrecoupable cost, does not constitute irreparable injury," *Martin*, 680 F.Supp. at 621, money,

time, and resources spent arbitrating these claims are not the only potential injuries here. The

concern is that allowing over 180 arbitrations to be heard by a mix of arbitrators, each of whom

will likely come to their own independent and contradictory conclusions that may be rendered

ineffective by this Court, will result in harm to GEICO from which it cannot recover. *Elzanaty*,

929 F. Supp. at 222.

Defendants' reliance on the Second Circuit's opinion in *Allstate Insurance Co. v. Harvey

Family Chiropractic*, 677 Fed. Appx. 716 (2d Cir. 2017), is misplaced. The court in that case held

that "the mere injuries . . . in terms of money, time, and energy necessarily expended absent a stay

of ongoing state court and arbitration proceedings are not enough to establish irreparable harm."

*Harvey Family Chiropractic*, 677 Fed. Appx. At *4-5. Rather it is the inconsistency to which

hundreds of arbitrations will inevitably give rise, the frustration of the declaratory judgment relief

for which GEICO is likely to succeed on the merits, and the resources spent vacating hundreds of

arbitration awards that satisfies the irreparable harm prong of the preliminary injunction standard.

In any event, the decision in *Harvey Family Chiropractic* was a summary order and has no

precedential effect. *AHW Inv. P'ship v. Citigroup Inc.*, 806 F.3d 695, fn. 5 (2d Cir. 2015) ("The rationale underlying the Rule is that such orders, being summary, frequently do not set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make our summary ruling applicable to the new case."); *see also Government Employees Insurance Co. v. Strutsovskiy*, No. 12-cv-330 (LJV), 2017 WL 4837584, at *7 (W.D.N.Y. 2017) (staying all No-Fault collection arbitrations pending the resolution of GEICO's declaratory judgment action and rejecting the summary order in *Harvey Family Chiropractic*).

GEICO also argues that "expedited no-fault arbitration is simply not the appropriate venue to litigate large-scale, complex fraud allegations involving thousands of claims over the course of several years." The Court agrees. Section 5106(a) of the New York Insurance law provides that no-fault insurance benefit payments are overdue if "not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained." Section 5106(b) provides an arbitration right only in a "dispute involving the insurer's liability to pay first party benefits . . . the amount thereof or any other matter which may arise *pursuant to subsection (a) of this section*." The Second Circuit in *Allstate Insurance Co. v. Mun* addressed the linkage between the 30-day reimbursement process in subsection (a) and the arbitration right in subsection (b). 751 F.3d at 99. Subsection (a) defines when insurance companies must pay claims; subsection (b) makes arbitrations available for disputes stemming from those claims. *Id.* The two sections "work together 'to create a simple, efficient system that . . . provide[s] prompt compensation to accident victims without regard to fault, and in that way reduce[s] costs for both courts and insureds.'" *Id.* (citing *State Farm Mut. Auto Ins. Co. v. Mallela*, 372 F.3d 500, 502 (2d Cir. 2004)). As a result, New York's arbitration process for No-Fault coverage is a "special expedited," simple affair designed to work as quickly

11

as possible.  *See* N.Y. Comp. Codes R. & Regs. tit. 11, § 65-4.5 (prescribing the no-fault arbitration forum procedure).  For example, discovery is limited or non-existent and the insurance companies are essentially defenseless.  *Mun*, 751 F.3d at 99; N.Y. Ins. Law § 5106(b) ("The expedited eligibility hearing option shall be a forum for eligibility disputes only, and shall not include the submission of any particular bill, payment or claim for any specific benefit for adjudication, *nor shall it consider any other defense to payment*.") (emphasis added); *see also Strutsovskiy*, 2017 WL 4837584, at * 3 (noting that the failure to comply with the 30-day "pay or deny" requirement under the no-fault laws precludes the insurer from raising most defenses, including lack of medical necessity).  As a result, complex fraud and RICO claims, discovered and matured years after the providers were fully reimbursed, cannot be shoehorned into this system.  *Mun*, 751 F.3d at 99. The Court agrees that doing so here would cause irreparable harm to GEICO which cannot be compensated by any monetary award.

### c.   Likelihood of Success on the Merits

GEICO seeks a preliminary injunction pending the resolution of its declaratory judgment claim only.  Therefore, the Court need not venture into the complicated nature of its RICO and common law fraud claims.[2]  A declaratory judgment action is ripe for adjudication where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Duane Reade, Inc., v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005).  A District Court must ask: (1) whether the declaratory judgment will serve a useful purpose in clarifying or settling the legal issues involved;

---

[2] The Court will determine below whether GEICO has established a probability of success on the merits of its civil RICO claims for purposes of its attachment request.

12

and (2) whether the judgment would finalize the controversy and offer relief from uncertainty. *Id.* The Court answers both questions in the affirmative.

GEICO seeks a declaratory judgment that Defendants are ineligible for reimbursement of claims submitted to it because (1) the acupuncture services were not medically necessary and were provided pursuant to pre-determined fraudulent protocols designed solely to enrich Defendants, rather than to treat or otherwise benefit the insureds; (2) Defendants engaged in a scheme to defraud GEICO using unlawful fee-splitting, kickback, and referral arrangements with unlicensed persons in violation of New York law; (3) Defendants intentionally and fraudulently misrepresented and exaggerated the level of services purportedly provided in order to inflate the charges submitted to GEICO; and (4) the services were performed by independent contractors rather than employees of Mingmen or Sanli.

Under New York's No-Fault Insurance Laws, the Court need only find that one of the above allegations is true to conclude that Defendants are ineligible to receive reimbursement for No-Fault Benefits. For example, if the Court finds that Defendants were engaged in fee-splitting, kickback, and referral arrangements, that alone would disqualify Defendants from reimbursement. The Court finds that GEICO has shown more than a likelihood of success on that allegation.

GEICO alleges that Mayzenberg conspired with the Dovmans and others to send a steady stream of patients through illegal fee-splitting, kickback, and referral arrangements. After a review of the Amended Complaint, the Exhibits submitted with this motion, and Mayzenberg's testimony, the Court concludes that there is more than a likelihood of proving that this is true. Mayzenberg testified that he knew very little, if anything at all, about the Dovman shell companies that he used for "advertising" and "marketing" services. He did not know the names of the companies, where they were located, or whether they had online websites. He did not have their phone numbers and

13

did not remember ever meeting anyone who worked for them.  Significantly, he did not even know what type of advertising and marketing services were provided to him other than "flyers," which he did not have copies of, and ads in newspapers which he could not name.  What is more, Sanli paid for these advertising services on behalf of Mingmen even though Mingmen received the benefit of the stream of patients and Sanli has not treated a patient since 2011.  When asked why he would pay a company named "Garbage Removal" for advertising and marketing services, Mayzenberg testified "[i]f garbage removal company can find people in garbage there, and sends them to the clinic, I don't care how garbage company is called."  The Court would expect the owner of a medical facility to at least have a point of contact with its advertising and marketing services and to know how its facility was being marketed or advertised.

Further, there are numerous checks that were made from Sanli and Laogong's accounts to the Dovman shell entities and were signed by Mayzenberg.  When I. Dovman was asked whether the payments from Sanli and Laogong were kickbacks in exchange for patient referrals, he invoked his Fifth Amendment protection against self-incrimination.   In fact, he invoked the Fifth Amendment in response to every single question at his deposition.  *U.S. v. Nagelberg*, 772 F. Supp. 120, 123 (E.D.N.Y. 1991) ("It is well-established that the Fifth Amendment privilege against self-incrimination may be invoked in a civil proceeding.  If it is, the trier of fact is permitted to draw an adverse inference from the invocation.") (internal citations omitted); *see also Libutti v. U.S.*, 107 F.3d 110, 121 (2d Cir. 1997) (regarding the weight to accord an adverse inference, "[s]ilence is often evidence of the most persuasive character.").

As noted above, a health care provider is ineligible for No-Fault Benefits "if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such services . . . ." 11 N.Y.C.R.R. § 65-3.16(a)(12).  New York Education Law prohibits a medical

professional corporation from "directly or indirectly offering [or] giving . . . any fee or other consideration to or from a third party for the referral of a patient . . . in the connection with the performance of professional services."   8 N.Y.C.R.R. § 29.1.   "If a medical professional corporation engages in this unprofessional conduct, it is rendered ineligible for a requested no-fault reimbursement by virtue of 11 N.Y.C.R.R. § 65-3.16(a)(12)."   *Badia*, 2015 WL 1258218, at *9.  Accordingly, because the Court finds that Mayzenberg, through his professional corporations, paid the Dovmans for the referral of patients in connection with the performance of acupuncture services, there is a likelihood of success on the merits of GEICO's declaratory judgment claim.

### d.  Balance of the Equities

Because the Court finds that GEICO has established a likelihood of success on the merits of its declaratory judgment claim, the Court need not balance the hardships in accordance with Federal Rule of Civil Procedure 65.  Nevertheless, it is worth noting that it is obviously more efficient and beneficial for Defendants if all of their claims are resolved in one action, rather than in hundreds of different proceedings.  What is more, if Defendants prevail in this action, they are entitled to statutory interest on their unpaid claims.  This Court has recognized that "[a]llegations of fraud on our health care system generally, and even the specific Civil RICO scheme alleged in the complaint, have become too common. There have been dozens of cases brought in this district alleging the same misuse of New York's No-Fault Insurance law. Justice would be better administered with the fewest number of fora hearing the issues presented herein."   *Allstate Ins. Co. v. Tvildiani*, No. 14-CV-7328 (SJ), 2015 WL 13048729, at *1 (E.D.N.Y. Apr. 14, 2015). Accordingly, GEICO's motion to stay pending and future No-Fault arbitrations is granted.

III.    **Stay of Pending No-Fault Collection Litigation in State Courts**

GEICO argues that the Court should stay over 500 pending lawsuits commenced by Defendants in New York state courts for the collection of unpaid claims.  The All Writs Act enables a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  However, GEICO correctly notes that the Anti-Injunction Act limits the authority of federal district courts to enjoin pending, previously filed state court proceedings.  28 U.S.C.A. § 2283.  The Act only permits federal courts to enjoin those proceedings in three specific circumstances, namely, where the injunction (1) is expressly authorized by Congress; (2) is necessary in aid of the federal court's jurisdiction; or (3) is necessary to protect or effectuate the federal court's judgment.  *Id.*  GEICO argues that the second exception applies here.

The Supreme Court has explained that the "necessary in aid of the federal court's jurisdiction" exception to the Anti-Injunction Act means injunctions may be issued where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."  *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *see also* Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. CHI. L. REV. 717, 754 (1977) (the "necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory.").  This exception is only applicable where, as here, the federal action has yet to go to final judgment.  *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985).  The mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction necessary to permit injunctive

16

relief under the "necessary in aid of" exception.  *In re Baldwin-United Corp.*, 770 F.2d at 336; *see also Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987).

While the Supreme Court admitted that the phrase "necessary in aid of" is broad, it has concluded that the exception "implies something similar to the concept of injunctions to 'protect or effectuate' judgments." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970).  Further, the exception usually involves *in rem* actions where the federal court has jurisdiction over a res and the state court action may effectively deprive the federal court of the opportunity to adjudicate as to that res.  *Kline v. Burke Const. Co.*, 260 U.S. 226 (1922).  However, there have been notable exceptions to the general *in rem* rule in multidistrict actions, school desegregation cases, interpleader actions, and class action settlements.  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1102 (9th Cir. 2008) ("Courts have held that the existence of advanced federal in personam litigation may, in some instances, permit an injunction in aid of jurisdiction."); *see also In re Joint Eastern and Southern Dist. Asbestos Litig.*, 134 F.R.D. 32, 38 (E.D.N.Y. & S.D.N.Y. 1990); *see also In re Baldwin-United Corp.*, 770 F.2d at 337; *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 365-66 (3d Cir. 2001).

GEICO primarily relies on the hearing transcript in *State Farm Mutual Automobile Insurance Company v. Jamaica Wellness Medical, P.C., et al.*, No. 1:16-cv-04948-FB-SMG (E.D.N.Y 2017), in support of its argument that staying Defendants' state court actions is "necessary in aid" of this Court's jurisdiction.  In that case, State Farm argued that it was entitled to a stay of pending state court proceedings under a different exception to the Anti-Injunction Act— that the stay was necessary to "protect or effectuate [the court's] judgments."  Indeed, there was a stipulated protective order governing discovery in that matter, and State Farm argued that allowing the state court actions to continue would result in an end run around the stipulated

protective order by allowing the defendants to seek the same protected discovery in the state court actions.  The Court *sua sponte* raised the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act and reasoned "it seems that the economy of judicial resources is amply served by having all of these issues revolved [sic] in this one proceeding and that I think that really warrants the exception to the Anti-Injunction Act here."[3]

Although the decision in *Jamaica Wellness* has practical appeal, its appeal is not recognized by the Second Circuit, which has ruled "creat[ing] an additional exception to the Anti-Injunction Act for circumstances where a federal court finds it *convenient* to enjoin related state proceedings [is] an approach contrary to the Supreme Court's direction that we construe doubts about the permissibility of an injunction in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."  *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 430 (2d Cir. 2004) (emphasis in original).

It is inconceivable that it is more convenient or cost effective for Defendants to commence over 500 separate state court proceedings against GEICO involving the same primary issue rather than consolidating those claims into one action. The Court questions the motives behind Defendants' desire to commence hundreds of separate litigations.  But while "[s]tays or injunctions are particularly appropriate when parallel proceedings have been determined to be vexatious or harassing efforts to undermine matters substantially resolved by the federal court," courts have only stayed vexatious proceedings where they would interfere with a multidistrict litigation or class action settlement.  *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 89 B.R.

---

[3] The Court in *Jamaica Wellness* relied on the opinions in (1) *Elzanaty* and (2) *Bruce v. Martin* to conclude that the exception to the Anti-Injunction Act applied.  But it is worth noting that *Elzanaty* involved a stay of arbitrations, not state court proceedings, and *Martin* involved a stay of future state court proceedings, which this Court addresses in the next section.  *Bruce v. Martin*, 680 F. Supp. 616 (S.D.N.Y. 1988).

283, 287 (D. Mass. 1988); *In re Baldwin-United Corp.*, 770 F.2d at 337 ("The existence of multiple and harassing actions by the states could only serve to frustrate the district court's efforts to craft a settlement in the multidistrict litigation before it.").  Those circumstances are not present here.

Unlike GEICO's position in the No-Fault arbitrations, GEICO is not prevented from asserting its fraud defenses in the state court proceedings because it paid or denied each of Defendants' claims within the required 30-day period under the No-Fault Insurance Law.  (Am. Compl. ¶¶ 195-98).  Therefore, entertaining a new exception to the Anti-Injunction Act is not warranted here.  Because GEICO cannot satisfy the "necessary in aid" of the court's jurisdiction exception to the Act, its motion to stay Defendants' pending state court proceedings is denied.[4]

## IV.     Enjoining Future No-Fault Collections Lawsuits

Because the Anti-Injunction Act does not prevent federal courts from enjoining proceedings in state courts that have not yet been filed, *Dombrowski v. Pfister*, 380 U.S. 279, 484 n. 2 (1965), the Court will look to the traditional standards for such injunctive relief.  *Bruce*, 680 F. Supp. at 620.  As discussed above, GEICO has demonstrated a likelihood of success on the merits of its declaratory judgment claim.  The Court will now turn to whether GEICO will suffer irreparable harm absent an injunction temporarily preventing Defendants from commencing future state court proceedings.

For the reasons the Court considered when it decided to stay any future arbitrations, GEICO will also be irreparably harmed if it is subject to hundreds of different state court rulings.  Even

---

[4] GEICO's argument that Federal Rule of Civil Procedure 13(a) prevents Defendants from asserting claims in state court after this action was commenced because they are considered compulsory counterclaims is misplaced.  The Rules Enabling Act does not allow Federal Rule of Civil Procedure 13(a) to apply on its own to state court proceedings without some final judgment on the merits to invoke res judicata principles.  *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 72, 96 N.E.3d 737, 742–43 (2018).

though GEICO is not defenseless in the state court actions as it is in the No-Fault collections arbitrations, requiring GEICO to assert the same defenses against the same parties in state court hundreds of times is judicial profligacy.  This Court will have all claims and defenses before it necessary to rule on GEICO's declaratory judgment action and Defendants' claims that they are in fact eligible to receive No-Fault Benefits.  It is in the interests of judicial economy to resolve the controversy in a single action, rather than require the parties and the lower courts to engage in piecemeal and repetitive litigation.  *St. Paul Travelers Ins. Co. v. Nandi*, 841 N.Y.S.2d 823, 2007 WL 1662050, at *5 (Sup. Ct. Queens Cnty. 2007).  Accordingly, GEICO's motion to enjoin any future state court proceedings brought by Defendants pending the resolution of its declaratory judgment action is granted.

## V.    Security Requirement under Rule 65(c)

GEICO argues that the Court should waive the security requirement under Rule 65(c) because its requested injunction will not cause Defendants any prejudice.  Rule 65(c) provides "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  While the Rule appears mandatory, an exception to the bond requirement has been crafted for, *inter alia,* cases involving the enforcement of "public interests" arising out of "comprehensive federal health and welfare statutes."  *Pharm. Soc. of State of New York, Inc. v. New York State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995).  When determining if claims involve the enforcement of public interest, "the nature of the rights being enforced, rather than the nature of the entity enforcing them, is the central consideration in determining whether the bond requirement should be waived under this exception."  *Id.* at 1175.  Further, a district court has a wide discretion to dispense with the bond

requirement "where there has been no proof of likelihood of harm." *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012).

While there is no federal health and welfare statue involved in this action, New York's No-Fault insurance statutes are. Those laws were designed to protect accident victims regardless of fault by enabling them to obtain necessary medical attention without concern of the ability to pay. It is of course in the public's interest to enforce those laws. However, as noted above, allegations of fraud on our health care system generally, and even the specific civil RICO scheme alleged here, have become too common. Preventing fraud on our health care system is also in the public's interest. In any event, the Court has already concluded that a preliminary injunction will not result in any prejudice to Defendants and would actually benefit them if all of their claims are decided in one proceeding. Therefore, the Court waives the security requirement of Rule 65(c).

## VI.   Attachment of Defendants' Assets

GEICO also seeks an order of attachment of Defendants' property up to the amount of $1,458,000.00 and an order directing Defendants to disclose the identity of all real property, bank accounts, brokerage accounts, accounts receivable, cash, stocks, bonds, motor vehicles, and boats in which they have any interest, as well as debts owed to Defendants by any party. Federal Rule of Civil Procedure 64 provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of a potential judgment." New York law requires that plaintiffs seeking attachment show (1) that there is a cause of action for money judgment, (2) that there is a probability of success on the merits of obtaining that money judgment, (3) that a ground for attachment listed in C.P.L.R. 6201 exists, and (4) that the amount demanded from defendants exceeds all counterclaims known to plaintiffs. N.Y. C.P.L.R. 6212(a).

GEICO has shown there is an action for a money judgment, *e.g.*, its RICO claims, and argues it has established a probability of success on the merits.  In considering this attachment prerequisite, the court "must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." *Allstate Ins. Co. v. TMR Medicbill Inc.*, No. CV-00-0002 (CPS), 2000 WL 34011895, at *14 (E.D.N.Y. July 13, 2000).  Giving GEICO the benefit of all legitimate inferences that can be drawn from the facts here, the Court concludes that GEICO has shown a probability of success on the merits of its civil RICO claims.

The Court's finding above that Defendants likely engaged in referral and kickback fee arrangements is relevant to its RICO analysis.  To establish a claim for a civil RICO violation, GEICO must establish seven elements: (1) that Defendants (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.  *Hinterberger v. Catholic Health Sys., Inc.*, 536 F. App'x 14, 16 (2d Cir. 2013).  The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity . . . ." 18 U.S.C. § 1961(4).  All Defendants are either individuals or incorporated entities that qualify as a RICO enterprise.  In addition, Defendants' operations affected interstate commerce because they submitted claims to and received No-Fault Benefits from GEICO, a Maryland corporation.

A violation of the mail fraud statute is a predicate act of racketeering under RICO and can be shown with evidence of (1) the existence of a scheme to defraud, (2) the Defendants knowing or intentional participation in the scheme, and (3) the use of interstate mails or wire communications in furtherance of the scheme.  *Badia*, 2015 WL 1258218, at *20.  It is probable that Defendants knowingly participated in a fraudulent scheme by treating accident victims

referred by the Dovmans in exchange for unlawful kickbacks to their shell entities and by subsequently billing GEICO for No-Fault Benefits reimbursement.  The United States mails were used in furtherance of that scheme when Mayzenberg, Mingmen, and Sanli submitted thousands of claims to GEICO for No-Fault Benefits despite the fact that they were not eligible for them.  *Id.* ("This element is satisfied here insofar as the scheme's objective was that [the medical corporation] would submit claims to Plaintiffs via the mails for no-fault reimbursement").

Demonstrating a pattern of racketeering activity requires proof of at least two predicate acts of racketeering within 10 years.  18 U.S.C. § 1961(5).  To find a "pattern," "the racketeering predicates must be related, and . . . they must amount to or pose a threat of continued criminal activity."  *Badia*, 2015 WL 1258218, at *21 (internal quotations omitted).  "Sporadic activity" or "two widely separated and isolated criminal offenses" do not qualify as a "pattern" under the RICO statute.  *Id.*  Defendants conduct here is far from sporadic.  GEICO attached a representative sample of checks from Mayzenberg, Mingmen, and Sanli to the Dovman shell entities and the Court's understanding is that there are even more checks made to the shell entities that have not been submitted.  Defendants have sent thousands of fraudulent claims to GEICO over the course of seven years and are continuing to do so.  Therefore, GEICO will probably succeed on its claim for a money judgment.

Next, GEICO must show grounds for attachment under C.P.L.R. 6201, which makes attachment available when "the defendant, with intent to . . . frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, or encumbered or secreted property."  N.Y. C.P.L.R. 6201(3).  To establish this ground for attachment, GEICO must prove two elements: (1) that defendant either is about to or has assigned, disposed of, encumbered, or secreted property, or removed it from the state; and (2) that defendant has acted or will act with

the intent to defraud his or her creditors or to frustrate the enforcement of a judgment that might be rendered in plaintiffs' favor.  *TMR Medicbill Inc.*, 2000 WL 34011895, at *13.  GEICO has shown that Mayzenberg transferred money to and from Sanli, Mingmen, and Laogong to the Dovman shell entities for what were probably kickback fees in exchange for patients.

However, assignment or divestment of property is not a sufficient ground for attachment; fraudulent intent must be proven.  *Id.* at *8.  GEICO argues that they can prove multiple "badges of fraud" to satisfy this element.  But the intent to defraud that must be proven here is beyond the fraud shown to satisfy GEICO's civil RICO claim.  It must be to defraud Defendants' "creditors or to frustrate the enforcement of a money judgment that might be rendered in plaintiffs' favor." *TMR Medicbill Inc.*, 2000 WL 34011895, at *13.  GEICO has not shown that the checks from Mingmen, Sanli, and Laogong to the Dovman shell entities were made for any purpose other than to conceal their referral and kickback scheme for as long as possible so that Mingmen can continue to bill GEICO for No-Fault Benefits.  Accordingly, because GEICO has not satisfied that ground for attachment under New York law, its motion for an attachment of Defendants' property is denied.

## CONCLUSION

For the reasons set forth above, GEICO's motion, pending resolution of its declaratory judgment action: to stay all pending and future No-Fault collections arbitrations before the AAA is **GRANTED**; to stay all pending No-Fault collections lawsuits in New York state courts is **DENIED**; to enjoin any future No-Fault collections lawsuits in New York state courts is **GRANTED**; and directing attachment of Defendants' property is **DENIED**.

Because the Court is temporarily staying Defendants' rights to commence further No-Fault arbitrations and state court actions, all procedures in this matter should proceed on an expedited basis.

SO ORDERED.

Dated:  Brooklyn, New York
  November 16, 2018

/s/_____
I. Leo Glasser                                    U.S.D.J.