UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, ET AL.,

                    Plaintiffs,                            MEMORANDUM AND ORDER
                                                       17-CV-2802

     - against -

IGOR MAYZENBERG, ET AL.,

                    Defendants.
----------------------------------------------------------x
**GLASSER**, Senior United States District Judge:

        Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO") brought this action against two sets of defendants: (i) Igor Mayzenberg ("Mayzenberg"), Mingmen Acupuncture Services, P.C. ("Mingmen"), Sanli Acupuncture, P.C. ("Sanli"), and Laogong Acupuncture, P.C. ("Laogong") (collectively, "Mayzenberg Defendants"); and (ii) Igor Dovman and his wife Tamilla Dovman a/k/a Tamilla Khanukayev (collectively, "Dovmans," and jointly with the Mayzenberg Defendants, "Defendants"). GEICO seeks redress for Defendants' scheme to submit fraudulent automobile-insurance claims to GEICO. Against various subsets of Defendants, GEICO asserts eight causes of action: (1) for a declaratory judgment that it does not owe reimbursements to the Mayzenberg Defendants for certain acupuncture services they provided to GEICO's insureds; (2) violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1962(c), against Mayzenberg; (3) RICO conspiracy, 18 U.S.C. § 1962(d), against Mayzenberg, Sanli, Laogong, and the Dovmans; (4) common law fraud against Mingmen and Mayzenberg; (5) unjust enrichment against Mingmen and Mayzenberg; (6) aiding

and abetting fraud against the Dovmans; (7) common law fraud against Sanli and Mayzenberg; and (8) unjust enrichment against Sanli and Mayzenberg.  Am. Compl. ¶¶ 199–254, ECF No. 48.

In November 2018, this Court granted in part and denied in part GEICO's motion to attach Defendants' assets and stay collection actions related to this case ("2018 Order").  *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018).  In March 2019, the Court denied Tamilla Dovman's motion to dismiss the claims against her.  *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2019 WL 1002955 (E.D.N.Y. Mar. 1, 2019).  Now before the Court are three motions for summary judgment under Fed. R. Civ. P. 56:  GEICO moves for summary judgment on claims 1 through 6; the Mayzenberg Defendants move for summary judgment on claims 1 through 5, 7, and 8; and Tamilla Dovman moves for summary judgment on claims 3 and 6.  ECF Nos. 118, 119 and 121.  Tamilla Dovman also moves again to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).  ECF No. 118.

For the reasons stated below, GEICO's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, the Mayzenberg Defendants' motion for summary judgment is **DENIED**, Tamilla Dovman's motion for summary judgment is **DENIED**, and Tamilla Dovman's motion to dismiss is **DENIED AS MOOT**.

**BACKGROUND**[1]

I.    **The Parties**

GEICO is an insurance company headquartered in Maryland and authorized to issue automobile insurance policies in the state of New York.

Mayzenberg resides in Brooklyn, New York, where he has been licensed to practice acupuncture since 1993.  Mayzenberg Defs.' Answer ¶ 11, ECF No. 13.  He has incorporated at

---

[1]    Except where noted, the below background facts reflect uncontested portions of the parties' statements of fact made pursuant to Local Rule 56.1.  *See* ECF Nos. 119-1, 128-1, 129-1, 130-1, 131, 136, 137.

least three professional corporations in New York licensed to provide acupuncture services: Mingmen in 1998, Laogong in 2000, and Sanli in 2001.  The New York Department of State dissolved Laogong in 2010 for failing to pay corporation fees.  Sanli, though extant, has treated no patients since 2011.

The Dovmans also reside in Brooklyn.  They control twenty-three companies which purportedly provide marketing and other business services ("Dovman Companies").  Neither Dovman is listed as incorporator on the Dovman Companies' certificates of incorporation filed with the New York Division of Corporations.  *See* Decl. of Michael Sirignano, at Ex. 16, ECF No. 119-19.[2]  But when the Dovman Companies later opened corporate bank accounts, some certificates of incorporation they submitted to banks listed Igor Dovman as incorporator.  *See id.* at Ex. 17, ECF No. 119-20.  Other account-application forms the Dovman Companies submitted to banks listed either of the Dovmans as president or owner.  *See id.* at Ex. 9, ECF No. 119-12.

## II.  New York's No-Fault Automobile Insurance Law

The Court has previously explained the relevant statutory scheme.  *See Mayzenberg*, 2018 WL 6031156, at *1–2.  The Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law § 5101 *et seq.*, "supplant[s] the state's common law tort remedies for most injuries associated with automobile accidents with a no-fault insurance scheme."  *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 502 (2d Cir. 2004).  The statute requires automobile insurance companies to reimburse insureds for "basic economic loss" due to personal injuries "arising out of the use or operation of a motor vehicle," without regard to fault.  N.Y. Ins. Law § 5102(b).  A "basic economic loss" is defined as up to $50,000 of, *inter alia*, necessary "professional health services."  *Id.* § 5102(a).  Insurers must issue no-fault reimbursements within thirty days of a claim being

---

[2]   Three individuals who were listed as incorporators have sworn that their identities were used without their permission.  *See* Sirignano Decl. Exs. 13–15, ECF Nos. 119-16, 119-17 and 119-18.

made.  *Id.* § 5106(a).  This no-fault system aims "to ensure prompt compensation for losses incurred by accident victims . . . , to reduce the burden on the courts and to provide substantial premium savings to New York motorists."  *Med. Soc'y of State v. Serio*, 800 N.E.2d 728, 731 (N.Y. 2003); *see also Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014).

Insureds may assign their no-fault reimbursement rights to healthcare providers, who then bill insurers directly.  11 N.Y.C.R.R. § 65-3.11(a).  Providers can, however, become ineligible for no-fault reimbursements.  Relevant here are two sections of the Codes, Rules and Regulations of the State of New York.  First, section 65-3.16(a)(12) of title 11 provides as follows:

> A provider of health care services is not eligible for reimbursement under [N.Y. Ins. Law §] 5102(a)(1) [defining health services that are reimbursable as a "basic economic loss"] . . . if [it] fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York . . . .

11 N.Y.C.R.R. § 65-3.16(a)(12).  Second, section 29.1(b)(3) of title 8 provides as follows:

> "Unprofessional conduct in the practice of any profession licensed . . . pursuant to title VIII of the Education Law . . . shall include . . . directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services . . . ."

8 N.Y.C.R.R. § 29.1(b)(3).  Acupuncturists are licensed pursuant to article 160 of title VIII of the Education Law.  In combination, these provisions make an acupuncturist who pays for patient referrals ineligible for no-fault reimbursements.  *See Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-1720, 2015 WL 1258218, at *9 (E.D.N.Y. March 18, 2015) ("A medical professional corporation renders itself ineligible [under § 65-3.16(a)(12)] for no-fault reimbursement if it pays kickbacks to third parties for the referral of Insureds.") (adopting report and recommendation).

III.     **The Dispute**

In its 2018 Order, the Court summarized GEICO's allegations as follows:

> GEICO alleges that Defendants implemented a fraudulent scheme where Mingmen and Sanli billed GEICO for millions of dollars' worth of acupuncture services that they were not eligible to receive.  Specifically, Mayzenberg used Sanli and Laogong to pay kickbacks to the Dovman [Companies] in exchange for their referral of insureds to Mingmen, who then hired independent contractors to perform medically unnecessary acupuncture services to accident victims.  Mingmen then submitted claims to GEICO for reimbursement of No-Fault Benefits [for which Mayzenberg knew Mingmen was ineligible].

*Mayzenberg*, 2018 WL 6031156, at *2 (citing Am. Compl. ¶¶ 1–11).  GEICO argues for summary judgment only as to Mingmen's reimbursement claims (not Sanli's), and only on the ground that Mayzenberg paid the Dovman Companies and others for patient referrals.  Pls. Mem. Supp. Mot. Summ. J. ("Pls.' Mem.") 1–4, ECF No. 120.  GEICO does not press its additional argument that non-employees provided unnecessary acupuncture services.  *Id.* at 3–4.

A.     **Mingmen's No-Fault Reimbursement Claims**

Between January 2012 and February 2019, Mingmen provided acupuncture services at rented clinics in New York City to automobile-accident victims insured by GEICO.  Mayzenberg did not provide the disputed services himself.  Rather, he visited the clinics to meet with acupuncturists, collect treatment reports, and restock supplies.  *See* Dep. Tr. of Igor Mayzenberg ("Mayzenberg Tr."), Oct. 25, 2018, at 180:16–181:11, 201:12–19, 216:9–22, ECF No. 119-4.

In this same period, Mingmen mailed no-fault reimbursement claims to GEICO totaling $4,886,559.82.  *See* Decl. of Robert Weir ("Weir Decl."), at Ex. 3, ECF No. 119-40.[3]  Based on these claims, GEICO paid Mingmen $1,735,368.05.  *See id.* at Ex. 1, ECF No. 119-38.  Thus,

---

[3]     Exhibit 3 to the Weir Declaration is a "claim run" listing all no-fault claims that Mingmen and Sanli submitted to GEICO.  GEICO and the Mayzenberg Defendants agree that it lists $4,886,559.82 of claims submitted by Mingmen.  *See* Mayzenberg's R. 56.1 Opp'n Stmt. ¶ 11.  Thus, the Court assumes that no Sanli claims are counted among the $4,886,559.82 of claims attributed to Mingmen.

$3,151,191.77 of claims remain unpaid (GEICO's declaratory judgment claim concerns this amount). Of the payments GEICO made to Mingmen, it paid $945,163.24 voluntarily and the remainder pursuant to collection actions (GEICO's fraud, aiding and abetting, RICO, and unjust enrichment claims concern its voluntary payments). *See id.* at Ex. 2, ECF No. 119-39.

    **B.**    **Sanli and Laogong's payments to the Dovman Companies and others**

Starting in March 2014 and continuing through September 2017, the Mayzenberg Defendants paid large sums of money to various entities, primarily the Dovman Companies.

From September 2015 to August 2017, Mingmen issued checks to Mayzenberg, who deposited those funds into the accounts of Sanli and Laogong, which he controlled. *See* Expert Witness Rep. of Mark Warshavsky 10–12, ECF No. 119-36. Sanli and Laogong then paid $389,182 to sixteen of the Dovman Companies.

Between September 2015 and June 2017, Sanli paid a further $77,185.50 to a personal-injury lawyer, Daniel Corley. He practiced through the Coney Island office of another personal-injury lawyer, David Feinerman, who employed Tamilla Dovman as a paralegal. Igor Dovman had an office in the same building. Funds in Corley's account were subsequently transferred to companies controlled by Igor Dovman and a company owned by his friend, Alex Slomovits. Igor Dovman's handwriting appears on some checks issued from Corley's account.

Between March 2014 and July 2017, Sanli paid $17,287 to Desiree Reid and $72,000 to Nina Brouk Advertisement, LLC ("Nina Brouk"). In September 2017, Laogong paid a further $6,000 to Nina Brouk, plus $6,900 to Dona Catalina Marketing, LLC ("Dona Catalina"). Desiree Reid supplied Mayzenberg with cosmetic creams and "recommended" Mayzenberg's acupuncture services to her customers. Mayzenberg Tr., Oct. 25, 2018, at 166:11–20. Nina Brouk and Dona Catalina placed Mingmen on listings of healthcare providers that they each maintained.

GEICO alleges that the above-listed payments bought patient referrals for Mingmen. Pls. Mem. 1–4, 9–30. Mayzenberg, in contrast, testified that they bought marketing and advertising services (and cosmetic creams). *See, e.g.*, Mayzenberg Tr., Mar. 15, 2018, at 66:10–14, 73:18–24, 95:3–4, 118:25–119:7. Igor Dovman, Corley, and Slomovits declined to answer deposition questions about the payments' purpose. *See generally* Dep. Tr. of Igor Dovman ("I. Dovman Tr."), Mar. 9, 2018, ECF No. 119-5; Dep. Tr. of Daniel Corely ("Corely Tr."), Mar. 12, 2018, ECF No. 119-7; Dep. Tr. of Alex Slomovits, Aug. 9, 2018, ECF No. 119-8. Tamilla Dovman testified that she was unaware of most payments and did not know their purpose. *See, e.g.*, Dep. Tr. of Tamilla Dovman ("T. Dovman Tr."), Aug. 21, 2018, at 62:18–67:4, 76:13–22, 89:4–7, 93:17–23, 107:10–15, ECF No. 119-6; *see also* Def. Tamilla Dovman's Mem. Supp. Mots. Dismiss and Summ. J. ("T. Dovman Mem.") 11–12, ECF No. 118.

## DISCUSSION

### I. Motions for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "consider the record in the light most favorable to the non-movant . . . [and] resolve all ambiguities and draw all factual inferences in favor of the non-movant[, but only] 'if there is a "genuine" dispute as to those facts.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A party "may not rely on '[c]onclusory allegations, conjecture, and speculation'" to sustain a factual dispute. *Perfect Dental, PLLC v. Allstate Ins. Co.*, 538 F. Supp. 2d 543, 546 (E.D.N.Y. 2007) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)). Rather, a party "must affirmatively 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). To establish that a dispute is genuine, a non-movant must show more than

"some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Perfect Dental*, 538 F. Supp. 2d at 546 (quoting *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994)).

Where multiple parties move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) (quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

### A.    Declaratory Judgment

In its motion for summary judgment, GEICO seeks a declaration that Mingmen is ineligible for reimbursement of its pending no-fault claims totaling $3,151,197.77.  Pls.' Mem. 31.  As the Court noted in its 2018 Order, GEICO says that Mingmen is ineligible for reimbursement because:

> (1) the acupuncture services were not medically necessary and were provided pursuant to pre-determined fraudulent protocols designed solely to enrich Defendants, rather than to treat or otherwise benefit the insureds; (2) Defendants engaged in a scheme to defraud GEICO using unlawful fee-splitting, kickback, and referral arrangements with unlicensed persons in violation of New York law; (3) Defendants intentionally and fraudulently misrepresented and exaggerated the level of services purportedly provided in order to inflate the charges submitted to GEICO; and (4) the services were performed by independent contractors rather than employees of Mingmen or Sanli.

*Mayzenberg*, 2018 WL 6031156, at *6.  The Court further noted that it "need only find that one of the above allegations is true to conclude that Defendants are ineligible to receive reimbursement for No-Fault Benefits."  *Id.*  GEICO's motion for summary judgment rests solely on the second allegation: Mingmen, through Mayzenberg, paid for patient referrals.  Pls.' Mem. 3–4, 30–32.  For the reasons stated below, the Court agrees that there is no genuine dispute about this fact.  Thus,

the Court will grant summary judgment to GEICO on its claim for declaratory judgment that Mingmen is ineligible for reimbursement of all pending no-fault claims, totaling $3,151,197.77.

The Court explained in its 2018 Order that a New York medical professional corporation which pays for patient referrals "is rendered ineligible for a requested no-fault reimbursement by virtue of 11 N.Y.C.R.R. § 65-3.16(a)(12)." *Mayzenberg*, 2018 WL 6031156, at *7 (quoting *Badia*, 2015 WL 1258218, at *9); *see also Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 128 N.E.3d 153, 155, 163 (N.Y. 2019) ("[P]ursuant to 11 N.Y.C.R.R. 65-3.16(a)(12), an insurer may withhold payment for medical services provided by a professional corporation when there is 'willful and material failure to abide by' licensing and incorporation statutes . . . [and] their violations . . . 'rise to the level of' a grave violation such as fraud." (quoting *State Farm Mut. Auto. Ins. Co. v. Mallela*, 827 N.E.2d 758, 761 (N.Y. 2005)).  The Court's 2018 Order, applying the standard required to resolve GEICO's motion to stay concurrent state-court and arbitration proceedings, held that a reasonable factfinder would likely find that the Mayzenberg Defendants paid for patient referrals.  *Mayzenberg*, 2018 WL 6031156, at *6–7.  The Court's holding here, that no rational factfinder could conclude otherwise, rests on several factors.

First, Defendants have failed to sustain a genuine dispute as to whether the Dovman Companies provided lawful marketing and advertising services to Defendants.  Mayzenberg testified that they did.  *See, e.g.*, Mayzenberg Tr., Mar. 15, 2018, at 66:10–14, 73:18–24, 94:24–95:4, 118:23–119:7.  But his bare assertions are insufficient, as the Court explained in its 2018 Order.  *Mayzenberg*, 2018 WL 6031156, at *6.  Defendants offer no evidence that the Dovman Companies provided allowable marketing and advertising services to Mingmen in exchange for Sanli and Laogong's payments.  Indeed, Mayzenberg concedes that no such evidence exists.  *See* Mayzenberg Tr., Mar. 15, 2018, at 66:15–18, 74:4–6, 95:18–20, 105:21–24, 119:8–11, 128:9–13,

136:15–21; Mayzenberg Tr., Oct. 25, 2018, at 84:8–12, 90:11–14, 92:17–23, 95:9–12, 96:15–19, 99:6–13, 101:3–6, 103:10–13, 106:16–20, 109:6–10.   Mayzenberg further concedes that he received no invoices itemizing the purported advertising and marketing services for which the Mayzenberg Defendants paid over $389,000 to the Dovman Companies.  *See* Mayzenberg Defs.' Local R. 56.1 Stmt. Opp'n GEICO's Mot. Summ. J. ("Mayzenberg's R. 56.1 Opp'n Stmt.") ¶¶ 25, 27, ECF No. 128-1.   Nor did he have a written agreement with any Dovman Company.  *See* Mayzenberg Tr., Mar. 15, 2018, at 144:11–146:2.  Defendants plainly have not sustained their allegation that the Dovman Companies provided legitimate marketing and advertising services. On the contrary, a rational factfinder could draw only one conclusion: the Mayzenberg Defendants paid the Dovman Companies for patient referrals.

This conclusion is fortified by the following three points.  One, in Mayzenberg's November 2017 interrogatory responses he listed no providers of marketing and advertising services, when asked directly about such services.  *See* Pls.' Mem. 22 (reproducing interrogatory and response). Only in his 2018 depositions did Mayzenberg first assert that the Dovman Companies provided marketing and advertising services, after GEICO had identified Igor Dovman as a witness (and later a party) in this action.  *See id.* at 22–23.  Two, in Mayzenberg's response to GEICO's Rule 56.1 Statement, he alleges that his "only communication" with Igor Dovman "was in January and March of 2018 during the pendency of this case."   Mayzenberg's R. 56.1 Opp'n Stmt. ¶ 24. However, telephone records show that they communicated repeatedly from as early as November 2017.  *See* Sirignano Decl. Ex. 21, ECF No. 119-24.  These first two points deprive Mayzenberg's recollections of credibility; no rational trier of fact could rely on them.   Three, the unrefuted evidence of improprieties in the Dovman Companies' incorporation and the convoluted routes by

which Mingmen paid the Dovman Companies cast a pall of illegitimacy over the Dovman Companies and their dealings with the Mayzenberg Defendants.

Second, Mayzenberg's own deposition testimony compels the conclusion that he paid the Dovman Companies and others only for patient referrals. He testified that one Dovman Company, ML Garbage Removal, Inc., sent patients to his clinic:

> Q.  Why would you pay a company called Garbage Removal for advertising and marketing services?
>
> A.  I don't care what the name of the company is. . . . If garbage removal company can find people, people in garbage there, and sends them to the clinic, I don't care how garbage company is called.

Mayzenberg Tr., Mar. 15, 2018, at 107:5–14.  Likewise, when asked about the services provided by another Dovman Company, DEL Business Supply, Inc., Mayzenberg said that it—and indeed all the Dovman Companies he paid—sent patients to his clinics:

> Q.  Did you get any invoices or bills from Del Supply?
>
> A.  No.  But what was similar to the companies, they all said they work with medical offices and they can promote my bunch of services in the medical facility, you know send me – that they will send me the patients, like that.

Mayzenberg Tr., Oct. 25, 2018, at 95:16–23.  Also in Mayzenberg's deposition testimony, he acknowledged that Sanli paid Desiree Reid for patient referrals (when Mingmen was the only Mayzenberg entity serving patients) and that he was, even now, still searching for patient referrals:

> Q.  What did you buy from Desiree Reid?
>
> A.  I bought some cosmetic creams, perfumes for my wife, and also she did something for me.  She introduced me to her clients.  She put my car[d]s over there.  She recommend [*sic*] me to people.
>
> Q.  She recommended your acupuncture services to her customers?
>
> A.  Yes. . . .

Q.   Why are you having Sanli issue checks to Desiree Reid for the services you described as buying some products, and I guess, referring patients?

A.   *Referring patients, but why not?* . . . [S]he told me she recommended ever [*sic*] second, she tried to promote me.  That's what she said . . . .

Q.   Have you paid other persons besides Desiree Reid for referring patients to Mingmen's practices?

A.   Could be, but I don't remember.  Actually, I'm looking for some –

Mayzenberg Tr., Oct. 25, 2018, at 166:11–168:15 (emphasis added).[4]  Mayzenberg argues that these were not admissions.  He says that GEICO, and now the Court, is (i) reading snippets of his testimony out of context, and (ii) misled by Mayzenberg's choice of words because English is not his first language.  *See* Hr'g Tr., May 14, 2019, 28:21–29:8, ECF No. 144.  The Court finds, however, that his testimony is clear.  To the extent that it is contradictory, by admitting to paying for patient referrals while also claiming that payments were for marketing and advertising services, it is discredited.  Such testimony cannot create a genuine issue of material fact where, as here, no other evidence does so, even when all evidence is drawn in the light most favorable to Defendants.  *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (affirming summary judgment where the nonmoving party's "testimony—which was largely unsubstantiated by any other direct evidence—was 'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit [it].").

---

[4]   Further examples of Mayzenberg admitting in his testimony to paying for patient referrals include the following: (i) "[Nina Brook] advertise[s] himself and people call him.  He recommend[s] different practitioners," Mayzenberg Tr., Oct. 25, 2018, at 113:9–11; (ii) "Q. How does Michael Brook and Nina Brook advertising actually work? . . . A. They recommend them, [Mingmen], and they can say, they have specialists in this and this and this office. . . . They will tell the people how good, how good the practitioners work . . . and they can go," *id.* at 119:18–120:19; (iii) "Q. So your understanding is that Dona Catalina recommends that patients go to a particular location.  A. That's how I understand, yes," *id.* at 153:5–8; and (iv) "[Q. T]he point of those payments [to the Dovman Companies and others] are to get patient referrals to the clinics where Mingmen operates, correct?  A. Not to the clinic [which Mingmen's acupuncturists shared with other providers].  To get reference [*sic*] to the acupuncture.  I don't pay for [a general] referral to the clinic," *id.* at 186:9–14.

Third, Defendants' witnesses have repeatedly failed to rebut GEICO's evidence that the Mayzenberg Defendants paid for improper patient referrals.  Tamilla Dovman claimed in her deposition not to know what the Mayzenberg Defendants received in exchange for their payments to the Dovman Companies, despite being the named president and signatory of at least one of them.  *See* Tamilla Dovman's Local R. 56.1 Stmt. Opp'n GEICO's Mot. Summ. J. ("T. Dovman's R. 56.1 Stmt.") ¶ 35, ECF No. 131.  Tamilla Dovman's attorney was unable to explain to the Court the purpose of the Dovman Companies that she controlled.  *See*  Hr'g Tr., May 14, 2019, at 25:4–26:3.  Igor Dovman invoked his Fifth Amendment privilege against self-incrimination in response to being asked if he referred patients to the Mayzenberg Defendants in exchange for payments from Sanli and Laogong.  *See* I. Dovman Tr., at 150:11–151:25.  Corley also invoked the Fifth Amendment, when asked if he handled funds for unlawful patient referrals or participated in a scheme involving patient referrals.  *See* Corely Tr., at 87:11–89:12, 238:24–239:7; *see also* Mayzenberg's R. 56.1 Opp'n Stmt. ¶¶ 88–89.  They easily could have said that the payments were for legitimate services, but they did not.

While the Court may not draw adverse inferences against a nonmoving party, including the adverse inference that might otherwise be drawn from a witness's invocation of the Fifth Amendment in a civil matter, Defendants' repeated failures to explain these payments highlight their failure to sustain triable issues of fact.  *See Amusement Indus., Inc. v. Stern*, 721 F. App'x 9, 11 (2d Cir. 2018) (summary order) ("While adverse inferences cannot be drawn against a non-moving party at summary judgment based on an invocation of the Fifth Amendment privilege . . . 'invocation of the Fifth Amendment . . . [does not free a litigant] from adducing proof in support of a burden which would otherwise have been his.'" (quoting *United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir. 1995)); *In re 650 Fifth Ave.*, 830 F.3d 66, 93 n.25 (2d Cir. 2016) (taking

13

"exception to [district court's] suggestion that it could draw adverse inferences at summary judgment based on individuals' invocation of their Fifth Amendment privilege," but nonetheless affirming summary judgment because "there was no record evidence to dispute the overwhelming evidence" against nonmovant).  Defendants have deposed no witnesses.

Had Defendants adduced a shred of affirmative evidence to rebut GEICO's compelling evidence of Defendants' scheme to profit from unlawful patient referrals, the Court would have had to deny GEICO summary judgment.  Without such evidence, however, the Court must grant GEICO summary judgment on its claim for a declaration that Mingmen is ineligible for reimbursement on its outstanding no-fault claims.  *See Perfect Dental*, 538 F. Supp. 2d at 546.

The Court will refer this case to Magistrate Judge Bloom for a report and recommendation on any attorneys' fees that the Court may also award GEICO.

The Mayzenberg Defendants note that their payments to the Dovman Companies and others started after Mingmen began submitting no-fault claims to GEICO.[5]  They argue that this asynchrony precludes the Court from determining that all of Mingmen's outstanding no-fault claims are barred.  Mayzenberg Defs.' Mem. Supp. Mot. Summ. J. ("Mayzenberg Mem.") 16–17, ECF No. 123.  However, a healthcare services provider that improperly buys patient referrals is disqualified generally from receiving no-fault reimbursements under 8 N.Y.C.R.R. § 29.1(b)(3), not only those linked directly to an improper patient referral.  *See Mayzenberg*, 2018 WL 6031156, at *7; *Badia*, 2015 WL 1258218, at *9; *see also Carothers*, 128 N.E.3d at 163 ("The no-fault insurance regulations make providers ineligible for reimbursement when their violations of the

---

[5]    The parties agree that the Mayzenberg Defendants first made payments to an alleged referrer of patients in 2014 and paid the Dovman Companies between September 2015 and August 2017.  *See* Mayzenberg's R. 56.1 Opp'n Stmt. ¶¶ 25, 91.  They also agree that Mingmen submitted no-fault reimbursement claims to GEICO before 2014 and after 2017.  *See* GEICO's Local R. 56.1 Stmt. Opp'n Mayzenberg Defs.' Mot. Summ. J. ¶ 5, ECF No. 137.

cited statutes are more than merely technical and 'rise to the level of' a grave violation . . . ." (quoting *Mallela*, 827 N.E.2d at 761)). The Mayzenberg Defendants counter that reliance on 8 N.Y.C.R.R. § 29.1(b)(3) as a basis for precluding reimbursements this broadly "is a novel, unprecedented and unpersuasive position." Mayzenberg Mem. 18. The Court's research has not revealed binding precedent directly on point. However, its conclusion is not novel. *See, e.g.*, *Gov't Emps. Ins. Co. v. Jacques*, No. 14-CV-5299, 2017 WL 9487191, at *7 (E.D.N.Y. Feb. 13, 2017) (finding "illegal referral arrangements" one type of fraudulent no-fault claims), *report and recommendation adopted*, No. 14-CV-5299, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017); *Badia*, 2015 WL 1258218, at *10 (finding kickbacks paid by healthcare service provider for patient referrals one basis of "ineligib[ility] for no-fault reimbursement"); *HKP Physical Therapy, P.C. v. Gov't Emps. Ins. Co.*, 115 N.Y.S.3d 836, 850 (N.Y. Civ. Ct. 2019) ("[V]iolati[ng] . . . provisions [including § 29.1(b)(3)] . . . render[] [pharmacies] ineligible for [no-fault] benefits . . . .").

### B.   Common Law Fraud

GEICO's Amended Complaint alleges that Mayzenberg submitted at least $136,000 worth of fraudulent no-fault claims on behalf of Sanli and at least $486,000 worth of such claims for Mingmen, with the exact "amount to be determined at trial." Am. Compl. ¶¶ 224, 246, 254. On summary judgment, GEICO addresses only Mingmen's no-fault claims and now specifies that it seeks $945,163.24 in compensatory damages. Pls.' Mem. 4. In contrast, the Mayzenberg Defendants seek summary judgment as to allegations of fraud against both Sanli and Mingmen.

Under "New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976 (N.Y. 2009)).

The first, third, fourth, and fifth elements are easily satisfied here.  As to the first element, the Court has already found that the no-fault claims Mayzenberg submitted to GEICO omitted the material fact that they resulted from paid patient referrals.  As to the third element, Mayzenberg acknowledges that he filed the no-fault claims seeking reimbursement, Mayzenberg's R. 56.1 Opp'n Stmt. ¶ 11; thus, he necessarily intended that GEICO would rely on them.  As to the fourth element, GEICO was justified in relying on Mayzenberg's no-fault claims because they could not have known that they resulted from paid referrals, especially within the strict time limit afforded insurers to challenge no-fault claims.  *See Gov't Emps. Ins. Co. v. Simakovsky*, No. 14-CV-3775, 2015 WL 5821407, at *7 (E.D.N.Y. Oct. 5, 2015) ("A plaintiff's reliance on intentionally fraudulent statements is reasonable without further investigation when 'matters are held to be peculiarly within defendant's knowledge . . . .'" (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997))).  As to the fifth element, GEICO would suffer damages by reimbursing fraudulent claims.  *See Allstate Ins. Co. v. Polack*, No. 08-CV-565, 2012 WL 4489282, at *6 (E.D.N.Y. Sept. 12, 2012) ("[D]amages for . . . common law fraud claims . . . [are] equal to the settlements paid on the fraudulent [insurance] claims . . . ." (internal quotations omitted)), *report and recommendation adopted*, No. 08-CV-565, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012).

The second element, knowledge of a material fact's falsity, requires proof of scienter. *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 719 (S.D.N.Y. 2018) ("[C]ommon law fraud [in New York] . . . require[s] the [p]laintiff to plead scienter." (quoting *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 75 (S.D.N.Y. 2010)).  Summary judgment usually "is 'particularly inappropriate' where it is sought on the basis of 'the inferences which the parties seek to have drawn [as to] questions of motive, intent, and subjective feelings and reactions.'"  *Bussey v. Phillips*, 419 F.

Supp. 2d 569, 584 (S.D.N.Y. 2006) (quoting *Sam Wong & Son, Inc. v. N.Y. Mercantile Exch.*, 735 F.2d 653, 678 (2d Cir. 1984)).  The present case is the rare exception in which summary judgment is appropriate because a rational factfinder could conclude only that the undisputed evidence proves Mayzenberg's fraudulent intent.

In New York, a plaintiff pleading fraud "may satisfy the scienter requirement by producing 'evidence of conscious misbehavior or recklessness.'" *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 641 (S.D.N.Y. 2015) (quoting *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 158 (2d Cir. 2012)).  Conscious misbehavior may be proved on summary judgment by a defendant's direct admission.  *See, e.g.*, *Twenty First Century L.P.I. v. LaBianca*, 19 F. Supp. 2d 35, 39–40 (E.D.N.Y. 1998) (admission in prior criminal proceedings); *Sheinbrot v. Pfeffer*, 954 F. Supp. 555, 562 (E.D.N.Y. 1997) (admission in deposition).  Indirect evidence may also suffice, if no reasonable factfinder could conclude from it that scienter was absent.  *See, e.g.*, *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484–87 (6th Cir. 2013) (affirming summary judgment for plaintiffs on RICO claim involving fraud).  Recklessness "may take the place of actual knowledge as the requisite scienter," *Diamond Energy, Inc. v. Carbon/Graphite Grp., Inc.*, No. 89-CV-910S, 1992 WL 225554, at *4 (W.D.N.Y. Aug. 11, 1992), if a defendant's "refusal to see the obvious, [or his] failure to investigate the doubtful, [is] sufficiently gross," *Waran*, 315 F. Supp. 3d at 719 (quoting Rolf *v. Blyth, Eastman Dillan & Co.*, 570 F.2d 38, 46 n.13 (2d Cir. 1978)).

Here, the following uncontested facts compel the conclusion that Mayzenberg knew that no-fault claims resulting from paid referrals were fraudulent claims.  First, he has maintained a New York acupuncture license for decades, operating several professional medical corporations and filing millions of dollars' worth of no-fault claims.  *See* Mayzenberg's R. 56.1 Opp'n Stmt. ¶¶ 1–11.  Second, Mayzenberg ostensibly paid sixteen Dovman Companies for marketing and

advertising services, but only one company included "marketing" or "advertising" in its corporate name, *see id.* ¶ 25, and none was equipped to provide such services.  Third, he made large payments to these companies over several years, without receiving a single invoice or sample of their supposed marketing and advertising work.  *Id.* ¶¶ 25, 27.  Fourth, Igor Dovman declined to confirm the purpose of these payments, which were plainly structured to disguise their provenance and purpose, and Tamilla Dovman denied knowing about them despite presiding over companies that received payments.  I. Dovman Tr., 150:11–151:25; T. Dovman's R. 56.1 Stmt. ¶ 35.

In this context, it beggars belief to suggest that Mayzenberg did not know that paying for patient referrals would void Mingmen's no-fault claims; his actions make sense only if he knew that fact.  Mayzenberg has sustained no question of material fact that suggests any genuine doubt as to his actual knowledge of fraud.  The only contrary evidence he offers is his own self-serving and conclusory testimony.  *See* Mayzenberg Tr., Mar. 15, 2018, at 66:10–14, 73:18–24, 95:3–4, 118:25–119:7.[6]  Thus, the Court holds that there is no genuine dispute that Mayzenberg knew the claims he submitted to GEICO were fraudulent.  *See Perfect Dental*, 538 F. Supp. 2d at 546.

Accordingly, no genuine dispute concerning a material fact exists as to any element of GEICO's fraud claim.  Therefore, Mayzenberg and Mingmen are liable for fraud as a matter of law.  The Court will grant GEICO's motion for summary judgment, deny the Mayzenberg Defendants' motion for summary judgment, and award GEICO compensatory damages in the amount of $945,163.24.  This amount equals the voluntary reimbursements that GEICO paid to Mingmen, which amount the Mayzenberg Defendants admit.  *See* Mayzenberg's R. 56.1 Opp'n

---

[6]  Even crediting Mayzenberg's conclusory testimony that he believed payments to the Dovman Companies funded legitimate marketing and advertising services, in light of the uncontested facts just enumerated he would have been reckless in submitting Mingmen's ineligible no-fault claims to GEICO. Such recklessness also suffices for scienter.  *See, e.g.*, *Waran*, 315 F. Supp. 3d at 719 ("[A] broker committed fraud by reassuring his client that trades were lawful 'without investigation and with utter disregard for whether there was a basis for the assertions.'" (quoting *Rolf*, 570 F.2d at 47–48)).

Stmt. ¶ 13.  Mingmen and Mayzenberg, as a corporation and its controller, are jointly and severally liable for these damages.  *See  Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052, 2022 WL 432320, at *8 (E.D.N.Y. Jan. 19, 2022) ("[A]s the nominal owner of the Provider Defendants, [the defendant physician] is jointly and severally liable for the damages attributed to . . . the Provider Defendant[] that she . . . submitted fraudulent claims through."), *report and recommendation adopted in relevant part*, No. 20-CV-6052, 2022 WL 426163 (E.D.N.Y. Feb. 11, 2022).

Magistrate Judge Bloom's report and recommendation should address prejudgment interest and attorneys' fees that the Court may award to GEICO on this and all other successful claims.

### C.     Aiding and Abetting Fraud

GEICO alleges that the Dovmans aided and abetted Mayzenberg and Mingmen's fraud. Pls.' Mem. 42.  The elements of aiding and abetting fraud under New York law are "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Pennington v. D'Ippolito*, 855 F. App'x 779, 783 (2d Cir. 2021) (quoting *Lerner  v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006)).

The first element, existence of a fraud, is satisfied because the Court has concluded that Mayzenberg fraudulently submitted no-fault claims to GEICO that were void.

As to the second element, "actual knowledge is required to impose liability on an aider and abettor under New York law." *Lerner*, 459 F.3d at 292 (quoting *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996)).  "The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one." *De Sole*, 139 F. Supp. 3d at 658 (quoting *de Abreu v. Bank of Am. Corp.*, 812 F. Supp. 2d 316, 322 (S.D.N.Y. 2011)).  A plaintiff may not "rely on mere speculation or conjecture" about a defendant's actual knowledge. *Pennington*, 855 F. App'x at 784 (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)).  Here, no speculation

is required.  It is undisputed that Mayzenberg made payments to the Dovman Companies.  It is also undisputed that one or other of the Dovmans controlled those companies.  As the Court has already explained, it is beyond genuine dispute that the Dovman Companies provided no legitimate marketing or advertising services to Mingmen and were, instead, providing paid patient referrals. Necessarily, therefore, as controllers of the Dovman Companies, both Dovmans knew they were accepting payment for these referrals.  The circuitous and divergent routes by which the Dovmans collected payment from Mayzenberg leave no doubt that they knew of the fraud and took steps to hide its operation.[7]

The third element, substantial assistance, exists when "(1) a defendant 'affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed'; and (2) 'the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.'"  *In re Agape Litig.*, 681 F. Supp. 2d 352, 364 (E.D.N.Y. 2010) (quoting *Rosner v. Bank of China*, No. 06-CV-13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008).  "'But-for' causation is insufficient [for proximate cause]; aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct."  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201–02 (S.D.N.Y. 2006).  Here, as just noted, the Dovmans assisted Mayzenberg and Mingmen's fraud by providing paid patient referrals and disguising their payments.  Proximate cause is established because the paid patient referrals that the Dovmans supplied were central to the fraud.  Moreover, by obscuring the payments they received, the Dovmans extended the fraud by making it harder for GEICO to discover it, increasing GEICO's damages.

---

[7]  Most payments went to Dovman Companies controlled by Igor Dovman. But $7,889 was paid to Green BH, Inc. and $8,105 was paid to DEL Business Supply, Inc., for which Tamilla Dovman admits she was a bank signatory.  *See* T. Dovman's R. 56.1 Stmt. ¶ 35; T. Dovman Tr., at 30:10–18, 172:21–24.

Accordingly, the Court concludes that Igor and Tamilla Dovman are liable for aiding and abetting Mayzenberg and Mingmen's fraud against GEICO, and it will grant summary judgment in GEICO's favor on this cause of action. The Dovmans are jointly and severally liable, with Mayzenberg and Mingmen, for the compensatory damages of $945,163.24 that the Court will award to GEICO on its fraud cause of action, plus related prejudgment interest and attorneys' fees that the Court may assess upon receipt of Magistrate Judge Bloom's report and recommendation.

## D.     RICO Claim Under 18 U.S.C. § 1962(c)

GEICO seeks summary judgment on its claim that Mayzenberg violated 18 U.S.C. § 1962(c) by submitting fraudulent no-fault claims to GEICO on behalf of Mingmen. Pls.' Mem. 32–37. GEICO seeks damages of treble the $945,163.24 that it paid voluntarily to Mingmen (i.e., $2,835,489.72). *Id.* at 37. To prevail on a § 1962(c) claim, a plaintiff must prove "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, [plus an] injury to business or property as a result of the RICO violation." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)).

### 1.     Conduct of an enterprise

A RICO "enterprise" may be "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Under § 1962(c), a defendant "must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity." *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 74 (E.D.N.Y. 2011) (quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994)). This "conduct" element requires the defendant to "participate in the operation or management of the enterprise itself." *Id.* (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). Here, GEICO alleges that Mingmen was the

enterprise.  Pls.' Mem. 33.  It is undisputed that Mingmen is a corporation, *see* Mayzenberg's R. 56.1 Opp'n Stmt. ¶ 5, which may qualify as a RICO enterprise.  It is also undisputed that Mayzenberg not only participated in Mingmen's operations and maintained an interest in it, but he directed Mingmen's affairs as its sole founder and owner. *See id.* ¶¶ 5, 10.  Thus, the first and second elements are met.

### 2.   Pattern of racketeering activity

The predicate racketeering acts alleged by GEICO are "thousands of violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon [Mayzenberg's] use of mails to submit fraudulent billing to GEICO."  Pls.' Mem. 33.  Mail fraud is included in the statutory definition of "racketeering activity."  18 U.S.C. § 1961(1)(B).  As the Court explained in its 2018 Order:

> A violation of the mail fraud statute is a predicate act of racketeering under RICO and can be shown with evidence of (1) the existence of a scheme to defraud, (2) the Defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or wire communications in furtherance of the scheme.

*Mayzenberg*, 2018 WL 6031156, at *11 (citing *Badia*, 2015 WL 1258218, at *20).  GEICO alleges that the reimbursement claims Mayzenberg mailed to GEICO were fraudulent because "Mingmen was not entitled [to reimbursement] due to its payment for patient referrals," and that Mayzenberg knew this. Pls.' Mem. 34.  The Court has already concluded the same.  Therefore, the first and second elements of mail fraud are met.  The third element is also satisfied: Mayzenberg admits using the United States mails to submit Mingmen's many no-fault claims to GEICO. *See* Mayzenberg's R. 56.1 Opp'n Stmt. ¶¶ 10–12.

Racketeering activity is established beyond genuine dispute by Mayzenberg's violations of the mail fraud statute.  For such violations to constitute a "pattern" of racketeering activity, they must have "consist[ed] of . . . 'at least two acts of racketeering activity,'" undertaken within ten

years of each other.  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014) (quoting 18 U.S.C. § 1961(5)).  And "to prove such a 'pattern,' a civil RICO plaintiff . . . 'must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity[.]'"  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)) (emphasis in original).

Here, GEICO argues that the "relatedness" prong of the pattern inquiry is satisfied because the fraudulent no-fault claims that Mayzenberg submitted through Mingmen involved "similar purposes, results, participants, victims, [and] methods of commission . . . ." Pls.' Mem. 36 (quoting *H.J. Inc.*, 492 U.S. at 241).  The Court agrees.  The purposes, results, participants, victims, and method by which Mayzenberg progressed the Mingmen enterprise were, in fact, identical.  There is, therefore, no doubt as to the relatedness of these predicate acts.

The "continuity" requirement "can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citing *H.J. Inc.*, 492 U.S. at 241).  "Although factors such as the number and variety of predicate acts and the number of participants may be germane to [a] showing [of] closed-ended continuity [it] is primarily a temporal concept."  *Id.* at 184 (quoting *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)) (internal quotation omitted).  The U.S. Court of Appeals for the Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time.'"  *Id.* (quoting *Cofacrèdit*, 187 F.3d at 242).

GEICO argues that it has "established the existence of a 'close-ended' pattern . . . as Mayzenberg's operation of the Mingmen enterprise . . . occurred for a period of more than five years." Pls.' Mem. 37.  Again, the Court agrees.  Not only did the mail fraud that furthered the Mingmen enterprise's objective continue over at least five years, each of the claims for no-fault reimbursement was a related but separate fraud.  The scheme went far beyond a few isolated attempts to complete fraudulent actions, as would be seen in ordinary instances of fraud.

Thus, the third and fourth elements are met.

### 3.     Injury

GEICO must also prove that Mayzenberg's "RICO predicate offense[s] 'not only [were] a "but for" cause of [its] injury, but . . . the proximate cause as well.'" *De Sole*, 137 F. Supp. 3d at 408 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Here, it is beyond question that the fraudulent no-fault claims submitted by Mayzenberg directly caused GEICO's loss.  When GEICO received those no-fault claims, it had no grounds to deny Mingmen the no-fault reimbursements it claimed, so GEICO issued reimbursements.

Accordingly, there remain no issues of material fact that are genuinely disputed concerning the elements of GEICO's RICO claim against Mayzenberg under 18 U.S.C. § 1962(c).  The Court will, thus, grant GEICO summary judgment on that claim, award GEICO treble damages, and direct Magistrate Judge Bloom's report and recommendation to address prejudgment interest and attorneys' fees that the Court may also award.  *See* 18 U.S.C. § 1964(c).  The Mayzenberg Defendants have also sought summary judgment against GEICO on this RICO claim, arguing in essence that it is meritless.  *See* Mayzenberg Mem. 11, 16–17.  Having granted summary judgment to GEICO, it necessarily follows that the Mayzenberg Defendants' motion should be and is denied.

### E.    RICO Claim Under 18 U.S.C. § 1962(d)

GEICO seeks summary judgment on its claim that Mayzenberg, Sanli, Laogong, and the Dovmans violated 18 U.S.C. § 1962(d) by conspiring in the Mingmen enterprise.  Pls.' Mem. 37–38.  Under § 1962(d), it is unlawful "for any person to conspire to violate any of the [other] provisions of [§ 1962]."  A "plaintiff must prove that (i) the defendants agreed to form and associate themselves with a RICO enterprise; (ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise; and (iii) if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Elsevier, Inc. v. Grossman*, No. 12-CV-5121, 2013 WL 6331839, at \*11 (S.D.N.Y. Dec. 5, 2013) (citing *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244–45 (2d Cir. 1999)).  A defendant must have agreed to participate "in a charged enterprise's affairs through a pattern of racketeering, not [simply] a conspiracy to commit predicate acts." *De Sole*, 137 F. Supp. 3d at 409 (quoting *United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009)) (internal quotations omitted).

Here, the Court has already concluded that Mayzenberg participated in the Mingmen enterprise.  It is undisputed that he controlled Sanli and Laogong, and that he used them to funnel payments to the Dovmans, which furthered the enterprise.  Thus, Mayzenberg and, at his direction, Sanli and Laogong necessarily agreed to associate with and further the Mingmen enterprise.

GEICO alleges that the Dovmans evidenced their agreement to "the overall objective of the Mingmen RICO enterprise through their receipt of hundreds of thousands of dollars from the Mayzenberg Defendants in exchange for patient referrals over a period of years."  Pls.' Mem. 38.  The Court agrees.  The Dovmans' repeated, circuitous, and deceptive payment arrangements leave no room for genuine dispute as to their understanding of the Mingmen enterprise and their

25

agreement to further that enterprise by supplying paid patient referrals.  The Dovmans' conduct makes sense only if they had agreed to further the Mingmen enterprise's objectives.

Accordingly, the Court concludes that Mayzenberg, Sanli, Laogong, and the Dovmans are liable for civil RICO conspiracy under 18 U.S.C. § 1962(d), and it will grant summary judgment to GEICO on this cause of action.  It necessarily follows that Tamilla Dovman's and the Mayzenberg Defendants' cross-motions for summary judgment should be and are denied. Mayzenberg, Sanli, Laogong, and the Dovmans are jointly and severally liable for the RICO damages of $2,835,489.72 that the Court will award on GEICO's claim under 18 U.S.C. § 1962(c), plus prejudgment interest and attorneys' fees that the Court may also assess.

### F.    Unjust Enrichment

On summary judgment, GEICO alleges that Mayzenberg and Mingmen were unjustly enriched when GEICO reimbursed Mingmen for certain of its no-fault claims.  Pls. Mem. 41–42. GEICO does not seek summary judgment on its claim of unjust enrichment as to Sanli.  Under New York law, an "unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Scifo v. Taibi*, 156 N.Y.S.3d 40, 44 (N.Y. App. Div. 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).  Therefore, having found Mayzenberg and Mingmen liable for fraud, GEICO's unjust enrichment claim against them will be dismissed as moot.

## II.    Tamilla Dovman's Motion to Dismiss

In May 2018, Tamilla Dovman moved to dismiss the claims made against her in the Amended Complaint.  ECF No. 68.  The Court denied that motion in March 2019.  *Mayzenberg*, 2019 WL 1002955.  She now moves again to dismiss the same claims.  *See* T. Dovman Mem. 9–10, 13–14.  Having already denied an identical motion, the Court dismisses as moot Tamilla Dovman's second motion to dismiss.

## CONCLUSION

For the foregoing reasons, GEICO's motion for summary judgment, ECF No. 119, is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. Summary judgment is granted to GEICO on its declaratory judgment claim; Mingmen is ineligible for reimbursement on its pending no-fault claims totaling $3,151,197.77;

2. Summary judgment is granted to GEICO on its RICO claim against Mayzenberg, under 18 U.S.C. § 1962(c); treble damages of $2,835,489.72—plus prejudgment interest and attorneys' fees that the Court may assess—are awarded to GEICO, minus any damages, prejudgment interest, and attorneys' fees awarded to GEICO on its fraud and aiding and abetting fraud claims;

3. Summary judgment is granted to GEICO on its RICO conspiracy claim, under 18 U.S.C. § 1962(d), against Igor Dovman and Tamilla Dovman; they are each jointly and severally liable for the same RICO damages, prejudgment interest, and attorneys' fees that the Court awards to GEICO on its RICO claim under 18 U.S.C. § 1962(c);

4. Summary judgment is granted to GEICO on its fraud claim against Mayzenberg and Mingmen; they are jointly and severally liable for compensatory damages of $945,163.24, plus prejudgment interest and attorneys' fees that the Court may assess;

5. Summary judgment is denied to GEICO on its unjust enrichment claim, which is dismissed; and

6. Summary judgment is granted to GEICO on its claim against Igor Dovman and Tamilla Dovman for aiding and abetting fraud; they are each jointly and severally liable for the $945,163.24 of damages that the Court assesses against Mayzenberg and Mingmen for fraud, plus prejudgment interest and attorneys' fees that the Court may assess.

The Court refers this case to Magistrate Judge Bloom for a report and recommendation on prejudgment interest and attorneys' fees that the Court may award to GEICO, having prevailed on its declaratory judgment, fraud, aiding and abetting fraud, and RICO claims.

The Mayzenberg Defendants' motion for summary judgment, ECF No. 121, is **DENIED**. Tamilla Dovman's motion for summary judgment, ECF No. 118, is **DENIED**. Tamilla Dovman's motion to dismiss, *id.*, is **DENIED AS MOOT**. Having denied Defendants' motions for summary judgment, two claims on which GEICO did not move for summary judgment remain live: (i) common law fraud against Sanli and Mayzenberg; and (ii) unjust enrichment also against Sanli and Mayzenberg.

SO ORDERED.

Dated: Brooklyn, New York
      August 24, 2022                          /s/
                                               I. Leo Glasser
                                               Senior United States District Judge